Place number 21.11.11 et al. Temple University Hospital, Inc. Petitioner versus National Labor Relations Board. Ms. Farmer for the petitioner, Mr. Weitz for the respondent, Mr. Walters for the intervener. Good morning, Council. Ms. Farmer, please proceed when you're ready. Thank you, Your Honor. May it please the Court, I'm Shannon Farmer. I represent Temple University Hospital. I've reserved two minutes for rebuttal. Since 1972, the NLRB has declined to assert jurisdiction over Temple University because of, quote, the unique relationship between the University and the Commonwealth of Pennsylvania. And that comes in the Temple University case 194 NLRB 1160. That unique relationship includes the fact that in 1965 Pennsylvania statute, the Temple University Commonwealth Act 24PS 2501-1, 2510-1 et sec, I apologize, denominates Temple University as an instrumentality of the Commonwealth, and the state has been substantially involved in the University's financial affairs and governance. Its status is not at issue. Temple University has owned Temple University Hospital since 1910. It has had unionized employees under the Pennsylvania Employee Relations Act, or PARA, for more than 40 years across more than 10 bargaining units. In 1995, the University created Temple Health System as a wholly owned subsidiary over which it remains control. That continues to this day. The record here is replete with the facts about that ongoing relationship, the vast majority of which were established by stipulation and are wholly undisputed. In 2015, PASNAP tried to end these four decades of stable labor relations by filing a petition with the NLRB to add 11 employees to a unit certified by the PLRB with Temple University Health System as the employer. At the union's request, that unit is approximately 665. Temple repeatedly offered to add these employees to the existing bargaining unit under PARA. The union refused because this is not about representing these employees, nor is it about providing these employees with protections under existing labor laws. Instead, the purpose, and this came in a letter from the then president of the union, was to avoid the anticipated Supreme Court union dues decision that ultimately came in Janus versus AFSCME. It's not speculation. The union put it in writing. In filing the petition, PASNAP took a legal position that was directly contrary to statements that it made to the PLRB a decade earlier when it was seeking to represent this very unit. It was also contrary to the statements it made to the PLRB in dozens of cases that PASNAP filed in the intervening years, including one that it pursued in front of the PLRB at the same time it pursued this petition in front of the NLRB. This forum gamesmanship led this court to remand Temple's prior appeal to the NLRB to consider whether judicial estoppel is available in board proceedings, and if so, to consider the record here in light of the Supreme Court's decision in New Hampshire versus Maine. The board did not do so. Instead, with no analysis of PASNAP's conduct, the board stated categorically that judicial estoppel could not be applied here because it was a result in a loss of board jurisdiction. This purported new rule is arbitrary and the court should not countenance the board's post hoc rationalization for it, nor the board's disregard of this court's clear direction in the prior case. Help me to understand why it is arbitrary for the board to be concerned that it is not going to be allowed or able to revisit a jurisdictional determination. Your Honor, this is not a question of whether the board, as it relates to the estoppel argument, and we obviously have other claims as it relates to this, so I'll talk to you in a moment, but as it relates to the estoppel, this is not a question of whether the board can assert jurisdiction over Temple University Hospital in any matter. It is limited to whether PASNAP can bring itself before the board, and that is really just in the case with all estoppel cases, right? It is not a question of subject matter jurisdiction. The cases that the board cites to which speak to estoppel can't deprive the board of subject matter jurisdiction are not applicable here. We're not questioning the board's authority to determine whether it has jurisdiction over Temple. We're not questioning whether the board has the authority to enforce federal labor law. What we're talking about here is PASNAP's misconduct and its ability to come before the board. The board's decision where it says this blanket rule, we can't be deprived of our authority, in fact, it disregards its own prior cases, as noted in our reply brief, including the We Transport case and others where the board has actually said, we will not countenance gamesmanship of the parties or forum shopping of the parties. They didn't say judicial estoppel, but they've, in those other cases, recognized that. That's all we're talking about here, and the board also regularly has applied doctrines like waiver and latches, which also prevent a party from bringing an action before it, and that's what we're talking about with the judicial estoppel claim, is that PASNAP cannot, because of its own wrongful conduct in making these statements, and in fact, directly contrary. Can I ask you, wouldn't we have anomalous results if we if the NLRB does not undertake to exercise its jurisdiction? I mean, we'd have different bargaining units, the same hospital, subject to both state and federal labor boards if we're going to have judicial estoppel prevent the NLRB from reaching this, this, or making this determination in this case. Isn't that a problem? Your Honor, whether that would in fact happen is speculative here, because it is PASNAP who is bringing this action, and the court need not address what could happen down the future. In addition, the court could certainly consider that as a factor in its exercise of its discretion over Temple University Hospital for the, as it relates to the jurisdictional claim generally, but the fact that PASNAP is prevented from bringing this claim doesn't prevent the board from, were it to find that jurisdiction were otherwise appropriate, exercise jurisdiction over the hospital in a different case. But here, because of PASNAP's misconduct, it can't come forward. That doesn't mean that the NLRB can't effectuate labor policy. And keeping in mind, that this Supreme, that the US Supreme Court has long held that the primary purpose of the National Labor Relations Act is to not force the jurisdiction of the NLRB, but to effectuate stable labor relations and encourage collective bargaining. We're not talking here about depriving any employees of substantive rights. In fact, the NLRB in its decision found that the remedies are available under the state statute and the third circuit has as well. So we're really talking about not rewarding the conduct of PASNAP in making directly contrary statements before to tribunals and statements that go to the very heart of this matter. Can I ask you about the standard of review though? I mean, the, this court would have to determine that the board abused its discretion in deciding that it would not, I guess, punish PASNAP for changing its view. So why, why is, why don't they have the discretion to make this determination? And that it's not an abuse of discretion to say under these circumstances where it might result in different bargaining units under different authorities and we have the authority and now we're choosing to exercise it. Why isn't it an abuse of discretion for them to say the value that you are focused on, meaning preventing PASNAP from changing its opinion is not as important to us than exercising our jurisdiction under these circumstances? Your Honor, while that may be the case, that's not what the court did. Remember the court in its analysis never talked about the facts here. It has yet to look at PASNAP's conduct despite the court's direction that it go back and do that if judicial estoppel is available. It didn't look at that and say, we are making that weighing and looking at the facts of PASNAP's conduct. And in fact, it has never done so in this case. It didn't in the initial decision to deny review where it addressed judicial estoppel in a footnote, nor did it on remand to this case. It in fact didn't go through and make that analysis. So while it may be true, Your Honor, that that would not be an abuse of discretion. Instead, what it said is we can't be forced to give up our jurisdiction over the party, which is not in fact the case. And that federal labor policy prevents us from doing that, which again is not in fact the case. What the courts, the council for the NLRB has made additional arguments in support of that, but those were not the decisions made by the board. And in the board's decision, it said in our prior decisions, basically we can't do this. But again, that's not the case. So we believe that the decision is an abuse of discretion because in fact the court did, the board, I'm sorry, did not engage in that analysis that you're talking about, Judge, and in fact did not follow it. It misinterpreted or ignored its own precedent, and it didn't do that analysis of the conduct of the party and its reference to federal labor policy and suggesting that it couldn't do it, we believe is incorrect. Do you turn in particular to the comedy argument that you make? Because I'm trying to really understand your point with respect to the board's inability to extend comedy in this circumstance. Yes, Your Honor. So if the board is correct that it has jurisdiction over Temple University Hospital because Temple University Hospital is an employer under 2-2, and I'll rest on our briefs for the arguments as to why we believe that that is not the case, given the limited time and the many issues that this appeal addresses. But that was true at the time of the PLRB certification. There have not been a change of facts that would change the or hurt you. I'm trying to understand. It would seem to me that comedy is warranted in a situation in which it turns out that the state board didn't have jurisdiction. That's precisely the kind of case in which the board should and perhaps did consider comedy to be appropriate. Your Honor, but the summer's living system is just the opposite, where in fact the board said, we cannot, we will not grant comedy in that circumstance because it has to be a valid state certification to which you're giving comedy. And here we have what the union conceded and the regional director found was a non-conforming unit that was certified after the healthcare rules, and yet the board is accepting, in this case, that unit and picking it up and plopping it into the NLRB. There weren't the same kinds of concerns here, I think, as in summer living. I mean, it seemed to me in that case, there was, you know, there were circumstances in which the employer didn't consent to the certification and the election. And there was a concern about the that comedy would not apply or that the board would decide we're not going to give comedy once it's clear that there's jurisdiction in the board and it's against the employer's consent that you're continuing to have these elections. We didn't have those kinds of concerns here. My understanding is that at the time, based on what you have even said in this argument, everybody conceded that the state board's elections were fine, and it just turns out now, in retrospect, that the board is saying that the NLRB always had jurisdiction. Why isn't that precisely the kind of scenario in which comedy would be extended? Your Honor, separate and apart from the regularity piece, but there's never been a case that we have found, and despite now our on this case, nobody has ever cited to a case where the board has granted comedy to a non-conforming unit that was certified after the passage of the health care rule, so that this is a unit that would not be able to exist under the NLRB. That was not the case under the PLRB at the time it was certified, again, because, you know, there was not a question that the PLRB had jurisdiction in Temple's mind or, frankly, in PASNAP's mind. Now, remember, there was a rival union that, in fact, asserted that the NLRB should have jurisdiction, and PASNAP here said that was not the case, and the PLRB agreed with PASNAP, but we're now talking about what would not have been a proper unit for the NLRB that's been ported over, and that has never been what the NLRB has done before. The case law about comedy and non-conforming units is all about non-conforming units that were certified prior to the passage of the health care rule, not after it, so we believe that there's an extraordinary exercise of comedy that is not consistent with how the board has treated pre-existing units under the health care rule, not consistent with the policies that drive the board's comedy analysis, and I know that my time is almost up, but I did want to just touch on the discretion in exercising jurisdiction here and the management training case, but I will save that for my rebuttal unless the court has additional questions. I think so, Ms. Farmer, we'll give you a little time for rebuttal. Mr. Weitz, we'll hear from you now. Good morning, may it please the court, Eric Weitz, on behalf of the National Labor Relations Board. Since there's a number of issues in this case, I think it might make most sense if I just go in the order they were discussed in the opening argument, so beginning with the judicial estoppel question and the board's decision after this court's remand. Judicial estoppel, of course, is an equitable doctrine that's ultimately designed to protect the integrity of the tribunal applying it, and for that reason, to some of your questions, Judge Jackson, the standard of review here should be very deferential to the board in making a decision that in its own internal administrative procedures, it is not going to recognize this equitable doctrine in the context of cases like this one where a party is trying to use judicial estoppel to essentially force the board to divest itself of its statutory jurisdiction, and as the board explained in its decision, under the overarching premise of the act is that there's a in the public interest and that the board has an obligation and a duty given to it by Congress to enforce the act and to entertain labor disputes that arise between covered entities, such as, in this case, the union and the hospital, and although the hospital, both in its brief and, again, at argument today, has tried to argue that the board's jurisdiction is not actually at issue, that's, of course, not the case as a practical matter, and I think it's useful not to get lost in linguistic distinctions here. The point that the board is making, which is entirely reasonable, is that the hospital is asking it to permanently and categorically divest itself from entertaining any representation petitions or unfair labor practice charges that are filed by this union against the hospital, and so that entire universe of representation disputes or unfair labor practice disputes, it's asking the board, based on an equitable doctrine, to surrender. I don't think I understood the petitioner just to disagree with you on that because I thought the petitioner's point was just what you said, which is that the application of estoppel here would be in those cases involving this union of this employer. That's correct, your honor, and the reason that's is that, again, the purpose of the act is to have a system of federal labor law in the public interest, and that's why the Supreme Court and many courts have recognized, going back to the 1940s or before, that the board's role is not to protect the private interest of an individual union, for example, but to administer this federal statute in the public interest, and so the notion that the union in particular would be the only party penalized by the application of digital estoppel is not correct. That's the point that the board is making when it's citing to, for example, section 10a of the act, where congress admonished the board, had a mandate in the statute that it is supposed to enforce the act even if there are alternative means, such as a state agency, and that the board is not supposed to sacrifice that authority, and moreover, to a question that Judge Jackson, you asked earlier, and we make in our brief, just as a general matter, the hospital's argument is also highly illogical, because that would mean that the board's ability to exercise jurisdiction would depend on the happenstance of the parties involved, and not only would that be a problem based on other bargaining units with other unions, but to use a hypothetical, if you have an unfair labor practice involving this union and this hospital, an unfair labor practice charge triggering the board's processes can be filed by any individual under the terms of the act and established precedent, and so if you had a particular unfair labor practice, if it was filed by a random individual off the street, presumably there would be no basis for applying judicial estoppel, whereas if the union filed the exact same charge, the board's conclusion as to whether it has jurisdiction over that dispute or not would necessarily be different, and this all goes to the board's overall discussion of why it does not make sense to apply judicial estoppel here, and given the very deferential standard of review, the agency would submit to the court that the board has fully explained itself, it did not act arbitrarily, and there's really no basis for second-guessing what the board did here. Could you address comedy, because Ms. Farmer indicates that the takeaway from Summers Living Systems is that there's really no case in which the board has granted comedy to a non-conforming unit, and so she sort of sees the world that that case sets up to prevent what has happened here. Yes, Your Honor, well I think there's, the hospital has really raised two distinct components to its comedy argument, there's first the overarching question of whether the board can ever extend comedy to a state agency certification when the state agency did not have jurisdiction, and I think that's the only issue or question that was arguably at issue in Summers Living Center, that was not a non-conforming unit question under the board's health care rule, that's really a separate point, so to take the two in turn, I think it's first useful to note what is that actually an issue in the extension of comedy here, and that is simply answering a very straightforward question of fact, which is does this particular union have majority support in a particular bargaining unit, and here setting aside the health care rule there's no dispute that this unit is otherwise inappropriate, and so the only thing that the board is extending comedy to is the Pennsylvania board's certification that this union represents a majority of the employees in this particular bargaining unit, and there's really no logical reason why the board cannot extend comedy to a state election as long as that state election passes the board's established test, which is essentially whether the election was fair and regular and reflects the the desire of the employees and does not violate board law, and the hospital has not presented any logical reason why the board should not extend comedy in those situations, Summers Living Center is really an outlier case in part for the reasons Judge Jackson that you mentioned of what was factually going on there, which is that the board law was in flux because management training was issued during the pendency of about half the election petitions. The employer in that case was vigorously contesting state jurisdiction all along, did not consent to the elections, and was ordered to do so, and that was all affirmed later by a state court of appeals, which actually invalidated the facts here and from the many cases where the board extends comedy to state election results, which in most cases the board does that without even acknowledging or addressing the jurisdictional thing because it's so straightforward. So for example, we cite a case in our brief for a different point, Stand By One Associates, that's an example of a run-of-the-mill case where the board extends comedy and says we have no reason to doubt the results of this state election that this union is the majority representative and we're going to extend comedy. But Mr. Weitz, can I just ask you because some of these reasons, the distinction between Summers Living is not really what the board said in its decision in order. So what do we do with that? How can we rely on these kinds of arguments if that's not exactly what the board pointed to? Well, Your Honor, I think this, I mean, our intention here and in the brief is simply to expand upon what the board said. I think the board obviously acknowledged Summers Living Center and discussed it, and its distinction focused on the fact that there had been this intervening state court decision that had held what the state agency had done was improper. And so, you know, the board did not necessarily spell out all of the implications of that. But I think the point that's relevant on review is that the board acknowledged this case and came up with a reason distinction as to why the facts of this particular case are different. And that's all that the board is really obligated to do to be found to have not acted arbitrarily. And the distinction that the board came up with was about the state court decision? That's correct, Your Honor. And that's in the board's decision on review in the representation case. It discusses it in a footnote, a lengthy footnote about Summers Living Center. And if I could turn briefly to the other aspect of the comedy question and your original question, Judge Jackson, and that's the notion of whether this was a nonconforming unit under the board's health care rule. That fails for the two we again noted in our brief, which is that number one, this particular unit is just plainly conforming under the terms of the board's rule, which limits the number of bargaining units that can exist in health care institutions. And the purpose of the rule was to prevent the proliferation of too many units in a health care setting. In this case, the certification itself very technical and professional employees at this particular facility, and that's fully compliant with the board's health care rule. And that can be the end of the court's analysis. But even assuming that this was a nonconforming unit as a hypothetical, the board noted that it would also be compliant with the health care rule because it is a unit that has existed continuously since the mid 1970s, which is well before the board promulgated this rule. And there is an exception for pre-existing units. And for the reasons we discussed in our brief, all of the distinctions that the hospital attempts to inject are not relevant under board law. The relevant question is a pragmatic one, which is, were these particular employees represented in the same unit continuously since the 1970s? And that has to be answered in the affirmative. And also, um, to the extent that there's any question, for example, of whether, um, particular texts are in a different unit, uh, that's something that would be resolved at a later date, either through bargaining of the parties or for a unit clarification petition. All that's at issue in this case is, was it appropriate for the board to acknowledge the appropriateness of this unit certification and the unit certification by its terms, uh, is compliant with the board's health care rule. And is that different than summer's living? Is that what you're saying? Yes. Summer's living center, as I recall, your honor did not involve any, any dispute about the board's health care rule, which is a distinct, uh, it's a rule that the board promulgated in terms of the composition of a bargaining unit. And summer's living center was a more general question of, was it appropriate in that case that the board or should the board have recognized, uh, the union victory in a state election? And so here, that aspect of the comedy analysis, simply whether, uh, this union is the majority representative. And really there's, there has never been any dispute over that. This is really just a hyper technical argument that the hospital's raising because they don't want the board to prevail in this case. And I guess if they were to win on this issue, the result would not be that this would go back to the PLRB, but it would simply force the board to hold an unnecessary election to redetermine the majority status of this union. Um, and I see that I'm out of time. I'm certainly happy to answer any additional questions that the court has about these issues or the other two issues in the case. Um, otherwise we would ask for enforcement, make sure my colleagues don't have additional questions for you, Mr. Weitz. Thank you. Mr. Walters, we'll hear from you now. Thank you, Your Honor. My name is Jonathan Walters. I'm here on behalf of the intervener Temple Allied Professionals, Pennsylvania Association of Staff Nurses and Allied Professionals. And I will refer to it as the union in this case. And I'd like to address the issues that weren't discussed so far in oral argument that were before the court the first time and weren't even and were not decided. One has to do with whether the hospital is a political subdivision. And we would contend that simple application of Hawkins County and Management Training Corporation should substantiate the board's position that that rejects the hospital political subdivision claim. The hospital wasn't created as a state actor to constitute a department or administrative part of the government. And the board of the hospital, and the board of Temple University Health Systems, which is a separate corporation of the hospital, and indeed the board of Temple University is not controlled by individuals responsible, public officials or the electorate. Nor can board members of the university, Temple University Hospital, or Temple University Health Systems be removed by the public officials or the electorate, which is the standard. And numerous court decisions make clear, and we've cited them in our briefs, but Temple University, and obviously the hospital, and therefore, and Temple University Health Systems are not political subdivisions. This issue has been litigated numerous occasions. I would also note, and this is in the record, that the hospital has been treated as an employer in the private sector for purposes of regulation under the Occupational Safety and Health Administration, and specifically the Labor Management Reporting Disclosure Act of 1959, which doesn't apply to public employees. And indeed, when unions at Temple University wrote in early 2000 and raised this issue, the response from the Department of Labor was, no, this is a private sector entity and we have regulatory authority. Moreover, now we recognize that the Temple University decisions in 1971 or 2 and predates management training, but even if assuming the hospital, the board would come to the same decision as the university today, it hardly removes Temple University Health Systems or the hospital from the ambit of NLRB jurisdiction. Each employer must be examined on its own. There are Native American groups that run businesses elsewhere, and this court's decision in Yukon-Keswick makes that clear that the board has jurisdiction. Horse racing is not, the board has discretionarily declined to assert jurisdiction, but if they open a casino, hotel casino, which goes on, that's covered. And finally, and I'm out of time, but for the state actor issue, which was raised by Temple, an employer can be a state actor pursuant to 42 U.S. Code 1983 and still be subject to board jurisdiction. Classic example, private contractor running a prison for a public entity. They, that may be governed, they are governed by the National Labor Relations Act, but I can assure you that any conduct that its employees engage in that interfere with the prisoner's constitutional rights is subject to suit under 42 U.S. Code 1983. I always like to point back to the original decision on that issue, which is, I don't think we decided, and I apologize, but it's Justice Brennan's decision in Burton v. Wilmington Parking Authority, in which he applied the equal protection clause to a private entity, which was providing services for the Wilmington Parking Authority. I raise that because Wilmington is closer and I've parked in their garages. And finally, just if I may, just real quickly, there are significant differences between the Public Employee Relations Act and the National Labor Relations Act, which provides greater protection for not just the union, but for the employees. Thank you. Thank you, Mr. Walters. Ms. Farmer, we'll give you back the two minutes you wanted for rebuttal. Thank you, Your Honor. I'd like to begin just by talking about the issue of the discretionary exercise of jurisdiction. In the 2017 decision, the board relied on management training to hold that it would not exercise its discretion here. As described by the board, the rule of management training is in essence that the board does not exercise its discretion if someone is a statutory employer. And we're not asking you to opine on whether that approach in and of itself is an abuse of discretion, though we do note that this court has never opined on the board's management training approach that it took here. Northwestern, which came years after management training, makes clear that, in fact, management training is not an absolute for the board. There, the board clearly exercised its discretion to decline jurisdiction over an entity that was clearly a statutory employer. So what we should properly read management training and put it in the context as the dissent by Member Misamara did in the board is to say management training relates to the exercise of jurisdiction over government contractors. That is not the situation we're talking about here. And Member Misamara details in his dissent the reasons why this is different and why management training should not apply. Given the time, I won't go through all of those, but I commend that to the court's reading. This is not a case like any that was cited by either the board or by the union in its brief. All of those involved government contract relationships. Here, this is very different. The health system and the hospital were stipulated to be interchangeable for purposes of labor relations. And, in fact, this unit was certified as employees of the health system. And it is notable here that the relationship is not just a matter of bylaws and things like that. The land on which Temple Hospital sits is owned by the Commonwealth. That land is declared to be public property by statutorily recognized Temple University Hospital by name as part of the university. This is a very different relationship. If I might just respond very briefly, Your Honor, to two other things raised by counsel for the NLRB. You can just do it briefly. Appreciate it, please. Thank you, Your Honor. The NLRB, unlike other federal agencies, doesn't have the power to bring to the petition filing and litigation choices of the parties over time. That is, in fact, exactly what happens. Every action by the board, like every action by a federal court, depends on a party bringing an action before it. It does not go out and enforce federal labor policy on its own. And that, I think, is key. And just finally, Your Honor, on the issue of comedy, while the board said in its decision that this was a conforming unit, the union conceded that it was not, and the regional director made that finding. So that statement by the board and the basis on which it made its ruling as it related to the comedy is itself an abuse of discretion as it ignored the record before it. Thank you, Your Honor. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Jackson